UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RYAN S. BOONE,

    Plaintiff,                                          Case No. 6:19-cv-01851

v.

RTO NATIONAL, LLC,

    Defendant.

## COMPLAINT

**NOW COMES** Ryan S. Boone ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining of RTO National, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. § 227 and violations of the Florida Consumer Collection Practices Act ("FCCPA") pursuant to Florida Statutes § 559.55.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the TCPA, and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant conducts business in the Middle District of Florida and maintains significant business contacts in the Middle District of Florida.

## PARTIES

4. Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, is a "person" as defined by 47 U.S.C. § 153(39).

5. Defendant provides contracts to companies in the backyard products industry and maintains its principal place of business at 104 Mauldin Road, Greenville, South Carolina 29605.

## FACTS SUPPORTING CAUSES OF ACTION

6. In November 2018, Plaintiff purchased a shed for his home from Superior Sheds for approximately $3,500. Plaintiff financed the shed with a rent-to-own agreement that required Plaintiff to pay a $300 down payment and then pay $140 each month.

7. Plaintiff made timely payments pursuant to the agreement until he fell into financial hardship in March 2019 and missed his monthly payment, thus incurring debt ("subject debt").

8. In April 2019, Plaintiff received a letter from Defendant stating it had acquired servicing rights to the subject debt.

9. On or around May 2019, Defendant began placing phone calls to Plaintiff's cellular phone number, (850) XXX-2141. When Plaintiff answered the phone, the representative for Defendant informed Plaintiff that Defendant was attempting to collect on the subject debt.

10. Plaintiff explained his inability to pay the debt, and Defendant threatened to send someone to Plaintiff's home to repossess the shed, even though it is located on private property.

11. Plaintiff demanded that Defendant stop calling him and leave him alone.

12. Despite Plaintiff's request, Defendant immediately called Plaintiff's cellular phone right after Plaintiff informed Defendant that he did not want to be called. Defendant continued to harass Plaintiff until he felt so harassed that he made a payment on the subject debt, causing an

7

overdraft on his bank account.

13. Defendant continued to ignore Plaintiff's requests and placed numerous harassing phone calls to Plaintiff's cellular phone without Plaintiff's consent, even leaving voicemails when Plaintiff did not answer the phone.

14. Furthermore, Defendant began sending automated text messages to Plaintiff's cellular phone reminding him that payment was due and giving him a phone number and URL he could use to make a payment.

15. Plaintiff never gave Defendant consent to send text messages to his cellular phone.

16. In one of these messages, Defendant's representative threatened Plaintiff with repossession of the shed, saying, "Today you hung up instead of going over options to help you since you can't afford to pay. I will make a decision today. If I have to send someone out to the home, there will be a $200 trip fee added…"

17. Defendant's threats made Plaintiff worry that someone would trespass on his private property and take the shed without his permission.

18. Defendant sent or caused to be sent numerous automated text messages and phone calls to Plaintiff's cellular phone.

19. In the phone calls Plaintiff answered, Plaintiff was greeted by a noticeable period of "dead air" while Defendant's telephone system attempted to connect Plaintiff to a live agent.

20. Specifically, there would be an approximate 3 second pause between the time Plaintiff said "hello," and the time that a live agent introduced them self as a representative of Defendant attempting to collect on the subject debt.

21. At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of his cellular telephone number. Plaintiff is and has always been financially responsible for this

7

cellular telephone and its services.

22. Plaintiff's demands that Defendant's phone calls and text messages cease fell on deaf ears and Defendant continued its phone harassment campaign.

23. Instead of ceasing calls and texts to Plaintiff, Defendant continued to harass and abuse Plaintiff by periodically calling and texting several times in one week.

24. Defendant intentionally harassed and abused Plaintiff on numerous occasions by texting and/or calling multiple times in one day, and on back to back days, with such frequency as can be reasonably expected to harass.

### DAMAGES

25. Defendant's wanton and malicious conduct has severely impacted Plaintiff's daily life and general well-being.

26. Plaintiff has expended time and incurred costs consulting with his attorneys as a result of Defendant's unfair, deceptive, and misleading actions.

27. Plaintiff was unduly inconvenienced and harassed by Defendant's unlawful attempts to collect the subject debt.

28. Defendant's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time, increased risk of personal injury resulting from the distraction caused by the text messages, aggravation that accompanies unsolicited text messages, harassment, emotional distress, anxiety, loss of concentration, diminished value and utility of his telephone equipment and telephone subscription services, the wear and tear caused to his cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a

result of increased usage of his telephone services.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION

29. Defendant repeatedly sent or caused to be sent frequent non-emergency text messages, including but not limited to the messages referenced above, to Plaintiff's cellular telephone number using a telephone facsimile machine ("TFM") or transmitting text without Plaintiff's prior consent in violation of 47 U.S.C. §227 (b)(1)(C).

30. The TCPA defines TFM as "equipment which has the capacity…to transcribe text or images, or both from paper into an electronic signal and to transmit that signal over a regular telephone line." 47 U.S.C. §227(a)(3).

31. Upon information and belief, Defendant used a TFM.

32. Defendant violated the TCPA by sending numerous text messages to Plaintiff's cellular phone using a TFM without his prior consent.

33. Any prior consent, if any, was revoked when Plaintiff spoke to Defendant's representative and told it to stop contacting him.

34. Moreover, Defendant repeatedly placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS") without Plaintiff's consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

35. Upon information and belief, based on Defendant's lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used an ATDS to place calls to Plaintiff's cellular telephone.

36. Upon information and belief, the ATDS employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks

into the phone.

37. Upon information and belief, Defendant's phone system stores telephone numbers to be called, using a random or sequential number generator, which it used to call Plaintiff on his cellular phone.

38. Defendant violated the TCPA by placing numerous phone calls to Plaintiff's cellular telephone between September 2018 and the present day, using an ATDS without his consent.

39. Any prior consent, if any, was revoked by Plaintiff's verbal revocation.

40. As pled above, Plaintiff was severely harmed by Defendant's collection texts and calls to his cellular phone.

41. Upon information and belief, Defendant has no system in place to document and archive whether it has consent to continue to contact consumers on their cellular phones.

42. Upon information and belief, Defendant knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

43. Defendant, through its agents, representatives, subsidiaries, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(C).

44. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 per text message. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA triggers this Honorable Court's discretion to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff RYAN S. BOONE respectfully prays this Honorable Court for the following relief:

a. Declare Defendant's text messages to Plaintiff to be violations of the TCPA;

b. Award Plaintiff damages of at least $500 per text message and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

c. Awarding Plaintiff costs and reasonable attorney fees;

d. Enjoining Defendant from further contacting Plaintiff; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

45. At all times relevant to this Complaint, Plaintiff, was and is a natural person, and is a "consumer" as that term is defined by Florida Statutes § 559.55(8).

46. At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

47. At all times relevant to this Complaint, Defendant was and is a "person" as said term is defined under Florida Statute §1.01(3) and is subject to the provisions of Fla. Stat. § 559.27 because said section applies to "any person" who collects or attempts to collect a consumer debt as defined in Fla. Stat. §559.72 because said provision applies to "any person" who collects or attempts to collect a consumer debt as defined in Fla.Stat. § 559.51(1).

48. At all times material hereto, the debt in question was a "consumer debt" as said term is defined under Florida Statute § 559.55(6).

49. Defendant violated section 559.72(7) of the FCCPA through its unlawful conduct.

**a. Violations of FCCPA § 559.72(7)**

50. A person violates section 559.72(7) of the FCCPA when it willfully communicates with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can

7

reasonably be expected to abuse or harass the debtor or any member of her or his family.

51. Defendant violated section 559.72(7) of the FCCPA when it placed repeated harassing telephone calls to Plaintiff after Plaintiff demanded that Defendant stop calling him. Defendant ignored Plaintiff's wishes and continued to place numerous harassing phone calls and text messages to Plaintiff's cellular phone.

52. Furthermore, Defendant violated section 559.72(7) of the FCCPA when it abusively threatened Plaintiff into believing that it would repossess his shed if he did not make an immediate payment. Defendant's conduct only served to harass and intimidate Plaintiff into paying the subject debt. Plaintiff felt so intimidated that he submitted a payment on the debt, which caused an overdraft on his account.

**WHEREFORE**, Plaintiff RYAN S. BOONE requests that this Honorable Court:

   a. Enter judgment in Plaintiff's favor and against Defendant;
   b. Award Plaintiff her actual damages in an amount to be determined at trial pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77;
   c. Award Plaintiff statutory damages of $1,000.00 pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77;
   d. Award Plaintiff and equitable relief, including enjoining Defendant from further violations, pursuant to Florida Consumer Collection Practices Act, Fla. Stat. §559.77(2);
   e. Award Plaintiff costs and reasonable attorneys' fees pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77; and
   f. Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: September 25, 2019          Respectfully Submitted,

                              /s/ Alexander J. Taylor
                              Alexander J. Taylor, Esq.
                              Florida Bar No. 1013947
                              Sulaiman Law Group, Ltd.
                              2500 South Highland Avenue
                              Suite 200
                              Lombard, IL 60148
                              Telephone: (630) 575-8181
                              ataylor@sulaimanlaw.com
                              *Counsel for Plaintiff*